ORAL ARGUMENT NOT SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, | ) ) ) ) |
| *Petitioner*, | ) ) Case No. 19-1222 ) Consolidated with 19-1227 |
| v. | ) ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) ) |
| *Respondent*. | ) ) |

**RESPONDENT'S CONSENT MOTION FOR VOLUNTARY VACATUR AND REMAND**

In response to the Court's order of February 5, 2021 requiring a motion or motions to govern further proceedings to be filed by March 4, 2021, Respondent the United States Environmental Protection Agency ("EPA") respectfully moves the Court to issue an order vacating and remanding the EPA Clean Air Act rule that was the subject of merits briefing in this case. As further explained below, vacatur and remand is appropriate because of an intervening decision of this Court in *American Lung Association v. EPA*, 985 F.3d 914 (D.C. Cir. 2021).

EPA has met and conferred telephonically with the Petitioners regarding its intent to file this motion. All Petitioners confirmed through counsel that they consent to the relief requested by this motion. The Petitioners plan to file a response concurring in this motion and supporting the same relief.

## BACKGROUND

These petitions challenge EPA's final rule entitled, "Adopting Requirements in Emission Guidelines for Municipal Solid Waste Landfills," 84 Fed. Reg. 44,547 (Aug. 26, 2019) (the "Alignment Rule" or "Rule"). Petitioner Environmental Defense Fund filed a petition for review of the Rule on October 23, 2019 (Case No. 19-1222). The remaining Petitioners—the States of California, by and through Attorney General Xavier Becerra and the California Air Resources Board, Illinois, Maryland, New Jersey, New Mexico, Oregon, Rhode Island, and Vermont, and the Commonwealth of Pennsylvania—filed a petition for review of the Rule on October 25, 2019 (Case No. 19-1227). The petitions were consolidated, and the parties completed merits briefing on December 11, 2020. Oral argument initially was scheduled for February 22, 2021, but was later taken off the calendar at EPA's unopposed request. ECF Docs. 1879430 (Order dated Jan. 11, 2021), *and* 1884027 (*Per Curiam* Order dated Feb. 5, 2021).

The following sections provide relevant statutory and regulatory background and summarize the intervening events that preceded this motion.

### A.    Statutory and Regulatory Background

The Clean Air Act, 42 U.S.C. §§ 7401-7671q ("CAA" or the "Act"), establishes a comprehensive program for controlling and improving the Nation's air quality. *NRDC v. Gorsuch*, 685 F.2d 718, 720-21 (D.C. Cir. 1982). Section 7411 "directs the EPA Administrator to list 'categories of stationary sources' that 'in his judgment . . . caus[e], or contribut[e] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare.'" *American Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (alterations in original), *quoting* 42 U.S.C. § 7411(b)(1)(A).

Section 7411 addresses both new (or modified) and existing stationary sources, setting forth two distinct approaches for regulating their air pollutant emissions. For new (or modified) sources, Section 7411 gives the default role as regulator to EPA. It requires the agency to establish, by regulation, "Federal standards of performance." 42 U.S.C. § 7411(b)(1). States "may" submit procedures pursuant to which EPA would delegate to the state authority to implement and enforce those performance standards. *Id.* § 7411(c)(1). But for existing sources, Section 7411(d) contemplates that states will take the leading role. It directs EPA to establish by regulation a procedure under which "each

state shall submit" a plan to implement and enforce standards for certain existing sources. *Id.* § 7411(d)(1). Thus, Section 7411(d) allows "each State to take the first cut at determining how best to achieve EPA emissions standards within its domain." *American Elec. Power*, 564 U.S. at 428.

EPA issued its first implementing regulations for Section 7411(d) in 1975. 40 Fed. Reg. 53,340 (Nov. 17, 1975). Under the 1975 regulations, states had to submit plans within 9 months after EPA published new emission guidelines for existing sources. *Id*. at 53,340-41. EPA was required to approve or disapprove submitted plans within four months of the submission deadline, and to promulgate a federal plan within six months of the submission deadline for those states without an approved plan. *Id.* at 53,341.

In 1996, EPA promulgated first-time Section 7411(d) emission guidelines for existing municipal solid waste landfills (hereinafter, "landfills"). 61 Fed. Reg. 9905 (Mar. 12, 1996). These guidelines generally provided that state plans should require any landfill emitting more than 50 megagrams annually of certain air pollutants to install control technology. In 2016, EPA amended these emission guidelines by, *inter alia*, lowering the emissions threshold to 34 megagrams per year. 81 Fed. Reg. 59,276 (Aug. 29, 2016) ("2016 rule" or "Landfill Guidelines"). The 2016 rule incorporated a textual cross-reference to the implementing regulations for Section 7411(d) that EPA had promulgated in

4

1975 as described above. 81 Fed. Reg. at 59,286, *citing* 40 C.F.R. § 60.23. Consistent with the timing provisions in those implementing regulations, the 2016 rule established a state plan submission deadline of May 30, 2017 (*i.e.*, nine months following promulgation), and required EPA approval or disapproval action and, as necessary, federal plan promulgation within the same timing intervals that EPA had established in the 1975 implementing regulation. *See* 81 Fed. Reg. at 59,286, 59,313.

EPA promulgated new implementing regulations for Section 7411(d) on July 8, 2019. 84 Fed. Reg. 32,520, 32,564 (the "Implementing Regulations Rule"). In that rule, EPA concluded that "[g]iving states three years to develop state plans is more appropriate than the nine months provided for under the existing implementing regulations." *Id.* at 32,564. The Implementing Regulations Rule also adopted longer intervals for EPA to review and approve or disapprove a state plan submission under Section 7411(d) (12 months following a completeness determination), and to promulgate a federal Section 7411(d) plan where it finds that a state failed to submit a plan, finds that the submission is incomplete, or disapproves the plan (two years following such a finding or disapproval). *Id.* EPA elected to apply these new timing requirements "to both emission guidelines published after the new implementing regulations are

finalized and to all ongoing emission guidelines already published" under Section 7411(d).  *Id.*

Shortly after promulgating the Implementing Regulations Rule, EPA promulgated the Alignment Rule, which amended the timing provisions of the Landfill Guidelines.  84 Fed. Reg. 44,547 (Aug. 26, 2019).  The preamble to the Alignment Rule expressly referred to and relied on the Implementing Regulations Rule, which EPA noted had applied new timing requirements "not just to [emission guidelines] published after the new implementing regulations are finalized, but also to ongoing [emission guidelines] already published under CAA section 111(d)," such as the Landfill Guidelines.  84 Fed. Reg. at 44,549, *citing* 84 Fed. Reg. at 32,564-65 and 32,575.  The Alignment Rule incorporated, by cross-reference to the provisions promulgated in the Implementation Regulations Rule, each of the same extended intervals for state plan submission, EPA review and action thereon, and federal plan promulgation that appeared in the Implementing Regulations Rule.  *Id.* at 44,549.  EPA's explanation of the rationale for its final action in the Alignment Rule, and its responses to comments on the proposed rule, were consistent with and mostly identical to justifications EPA had provided in support of the Implementing Regulations Rule.  *See, e.g.,* Final Brief for Respondents, ECF Doc. 1875483 (filed Dec. 11, 2020), at 10-14 (providing background summary of the rationales asserted in the proposed and

final Implementing Regulations Rule and Alignment Rule and asserting that the two were consistent).

### B. The Court's Decision in *American Lung* Vacating the Implementing Regulations Rule's Timing Provisions

After the parties had submitted final merits briefs in this case and the Court had scheduled oral argument, the Court issued its opinion in *American Lung, supra,* on January 19, 2021. *American Lung* vacated the timing provisions of the Implementing Regulations Rule. *See* 985 F.3d at 991-95. As noted above, these provisions had extended the timelines for state plan submissions, EPA's review of state plans, and EPA's promulgation of federal plans to implement emission guidelines issued under Section 111(d). *Id.* at 991. The Court found these extended timing intervals unlawful because EPA "failed to justify substantially extending established compliance timeframes." *Id.* at 992. Moreover, the Court found that EPA's analysis failed to take into account essential factors, due to what the Court described as a "total disregard of the added environmental and public health damage likely to result from slowing down the entire Section 7411(d) regulatory process." *Id.* at 993. In the Court's view, EPA's justification for the extended timing intervals in the Implementing Regulations Rule "offered undeveloped reasons of administrative convenience and regulatory symmetry, even as it ignored the environmental and public health effects of the Rule's compliance slowdown. The EPA thus 'failed to consider an important aspect of

the problem' . . . indeed, arguably the most important aspect." *Id.* at 995, *quoting Motor Vehicle Mfrs' Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court "accordingly vacate[d] the [Implementing Regulations Rule's] extensions of the Section 7411(d) compliance periods." 985 F.3d at 995. The Court later stayed a portion of its mandate in *American Lung Association* pertaining to a separate rule found unlawful, and directed the Clerk to issue, in the normal course, a "partial mandate" that includes "vacatur of the challenged timing provisions within the implementing regulations." Order dated Feb. 22, 2021 in *American Lung, supra*, ECF Doc. 1886386.

    **C.**    **Other Intervening Events Subsequent to Merits Briefing**

Following merits briefing and the Court's order scheduling oral argument in this case, a Presidential transition occurred. On January 20, 2021, President Biden issued an Executive Order that directed the heads of federal agencies (in this case EPA) to conduct an immediate review of any agency regulation or similar agency action promulgated between January 20, 2017, and January 20, 2021, that may affect health and the environment, including specifically regulations relating to clean air as governed by the Act. *See* Exec. Order 13990 of January 20, 2021, "Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis," 86 Fed. Reg. 7037 (Jan. 25, 2021), §§ 1, 2(a). That Order further authorized the Attorney General to, as

appropriate, request a court to stay proceedings challenging actions such as those identified in the Executive Order. *Id.* § 2(d). In a list of agency actions accompanying the Executive Order, the President specifically identified the rule challenged here as falling within the scope of the Executive Order, requiring that it be reviewed "in accordance with the Executive Order: 'Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis.'" *See* "Fact Sheet: List of Agency Actions for Review," at "U.S. Environmental Protection Agency" § 40.[1]

EPA subsequently wrote two letters communicating new intentions relating to this litigation and the Rule, respectively. First, on January 21, 2021, EPA's acting General Counsel issued a letter to the acting Deputy Assistant Attorney General for the Environmental & Natural Resources Division of the Department of Justice ("DOJ") requesting that, pursuant to the Executive Order, DOJ seek abeyances or stays of proceedings in pending challenges to EPA regulations promulgated between January 20, 2017, and January 20, 2021, or other forms of procedural relief as appropriate in particular cases. As explained above, the Alignment Rule expressly is subject to the Executive Order.

---

[1] Copies of the Executive Order, the Fact Sheet, and the two EPA letters discussed *infra* were attached to EPA's motion to continue oral argument in this case, ECF Doc. 1883408.

Second, on February 1, 2021, EPA Acting Assistant Administrator Joe Goffman sent a letter to counsel for the Petitioners in this case identifying an administrative action that EPA intends to take. Previously, EPA had published a notice in the Federal Register identifying a number of states as having failed to make a complete plan submission to satisfy the requirements of the Landfill Guidelines. 85 Fed. Reg. 14,474, 14,476 (Mar. 12, 2020). As communicated by the February 1, 2021 letter, EPA intends to issue a federal plan by May 2021 for any state that does not have an approved state plan implementing the Guidelines. EPA proposed a federal plan in August 2019. 84 Fed. Reg. 43,745 (Aug. 22, 2019).

Consistent with the President's Executive Order and the request from EPA's acting General Counsel, the Justice Department moved on February 2, 2021, to continue the oral argument for 45 days as noted above. ECF Doc. 1883408. The Court responded by granting the motion, removing this case from the argument calendar, and requiring a motion or motions to govern further proceedings to be filed no later than March 4, 2021. *Per Curiam* Order dated Feb. 5, 2021, ECF Doc. 1884027.

## ARGUMENT

Having completed an evaluation of the Alignment Rule consistent with the Executive Order and in light of the opinion in *American Lung*, EPA now seeks

vacatur and remand of the Rule as the appropriate procedure to resolve this litigation. In appropriate circumstances, this Court has discretion to grant requests for voluntary vacatur and remand even prior to full briefing on the merits, or where, as here, the parties fully briefed the merits, but the Court did not hear oral argument. *See, e.g., Sierra Club v. EPA*, 705 F.3d 458, 463-66 (D.C. Cir. 2013).

An agency normally may not repeal a rule without providing an opportunity for public notice and comment. *See* 42 U.S.C. § 7607(d) (establishing procedural requirements that apply to certain CAA rules); *see also* 5 U.S.C. § 553 (Administrative Procedure Act notice-and-comment requirements). However, where, as here, an agency concedes that an action under review is legally invalid, and the Court agrees, administrative notice-and-comment requirements in no way preclude a court from granting vacatur. *See, e.g., Sierra Club,* 705 F.3d at 463-66 (agreeing to vacate and remand concededly flawed portions of a rule); *Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 108 (D.D.C. 2002) (granting request for voluntary vacatur); *Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236 (D. Colo. 2011) (same); *see also, e.g.*, *Home Builders Ass'ns of N. Cal. v. Norton*, 293 F. Supp. 2d 1, 5 (D.D.C. 2002) (approving consent decree vacating agency action).

Whether vacatur, in addition to remand, is appropriate depends in large part on whether the agency might be able to justify the challenged rule or agency action on remand. *See Allied-Signal, Inc. v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). A further consideration is whether vacatur would have "disruptive consequences." *Id.* at 150.

In this case, given the Court's conclusions in *American Lung* regarding the inadequacy of EPA's justifications for the Implementing Regulations Rule's extended timing intervals, and the degree to which the Alignment Rule relied on largely the same justifications to incorporate those same invalidated timing interval provisions into the Landfill Guidelines, it is clear that vacatur of the Alignment Rule an appropriate course of action. In particular, as described above, the Court found that EPA failed to consider the environmental and public health impacts of slowing down the compliance timeframe in the Implementing Regulations Rule, and "thus 'failed to consider an important aspect of the problem.'" *American Lung*, 985 F.3d at 995, *quoting State Farm*, 463 U.S. at 43.

In the Alignment Rule, EPA did not give substantially greater consideration to the environmental or public health impacts of slowing down the compliance timeframe than it had in the Implementing Regulations Rule. Instead, EPA characterized the Alignment Rule as merely "a procedural change" and further asserted its "impacts cannot be characterized due to inherent uncertainties

and are likely to be minimal." 84 Fed. Reg. at 44,554. EPA's merits brief in this case took the position that its treatment of this issue during the Alignment Rule rulemaking—which did not differ substantially from its treatment of the issue in promulgating the Implementing Regulations Rule—satisfied the arbitrary and capricious standard. *See* Final Brief for Respondents at 43-54. But, the Court's opinion in *American Lung* squarely holds otherwise. 985 F.3d at 995.

Furthermore, vacatur is more practical in the context of this case, from an administrative perspective, than remand without vacatur would be. As described above, the Alignment Rule incorporated the timing provisions of the Implementing Regulations Rule by cross-referencing them. The Court has now ordered, in *American Lung*, the vacatur of the Implementing Regulations Rule's timing provisions, which will render the Alignment Rule's cross-referencing language a null set. In these circumstances, vacating the Alignment Rule makes more sense than remanding it to EPA in its current form.

Finally, there are no "disruptive consequences" presented here that would counsel in favor of remand without vacatur. Specifically, no deleterious effects on public health and the environment would result from vacatur. Moreover, EPA already has announced its intention to issue a federal plan by May 2021 for any state that does not have an approved state plan implementing the Landfill Emission Guidelines, and vacating the Alignment Rule would not alter or delay

EPA's process for issuing such a plan. Accordingly, vacatur of the Alignment Rule is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and issue an order vacating and remanding the Alignment Rule.

Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Div.

Dated: March 4, 2021      By:   /s/ *Brian H. Lynk*
BRIAN H. LYNK, D.C. Bar. No. 459525
Environmental Defense Section
P.O. Box 7611
Washington, DC  20044
(202) 514-6187 (tel.)
Attorney for Respondent

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the requirements of Fed. R. App. P. Rule 27(d)(2) because it contains 2,800 words according to the count of Microsoft Word and therefore is within the word limit of 5,200 words.

Dated:  March 4, 2021                             */s/ Brian H. Lynk*
                                                  Brian H. Lynk

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed with the Clerk of the Court this 4th of March, 2021, using the appellate CM/ECF System, causing true and correct copies thereof to be sent to all counsel of record through the appellate CM/ECF system.

*/s/ Brian H. Lynk*
Brian H. Lynk
